Filed 5/21/24  D.R. v. Superior Court CA2/8
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| D.R.,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>　　　　　Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES<br><br>　　　　　Real Party in Interest. | B335013<br><br>Los Angeles County<br>Super. Ct. No. 22CCJP04657A |

ORIGINAL PROCEEDINGS in mandate.  Tiana J. Murillo, Judge.  Petition denied.

Children's Law Center and Sarah Liebowitz for Petitioner.

The Law Office of Emily Berger, Los Angeles Dependency Lawyers, Inc., and Dominika Anna Campbell for Rebecca E. (Mother) as Joinder on behalf of Petitioner.

No appearance for Respondent.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Real Party in Interest.

\* \* \* \* \* \* \* \* \* \*

## INTRODUCTION

Juvenile dependent D.R., through his counsel, filed in this court a petition for extraordinary writ seeking review of the juvenile court's order terminating family reunification services and setting a Welfare and Institutions Code[1] section 366.26 hearing (setting order) for June 4, 2024. D.R. fails to show error in the juvenile court's order. His petition is therefore denied.

## FACTUAL AND PROCEDURAL BACKGROUND

D.R. was born in November 2022 to mother Rebecca E. and a father whose whereabouts were then unknown. D.R. was detained from mother at birth after testing positive for fentanyl. The juvenile court sustained a petition based on D.R.'s positive drug test and mother's history of drug use and abuse. The court ordered D.R. removed. He was initially placed in a foster home and later moved to the home of maternal grandparents. At no point has he lived with mother. Father disclaimed any interest in the proceedings below.

D.R. is not mother's only child. He has an older half sister. A March 2021 child welfare referral concerning half sister alleged mother smoked fentanyl pills in the family home and had been addicted to fentanyl for the past two years. The Los Angeles County Department of Children and Family Services (Department) investigated and mother denied substance abuse but failed to submit to drug testing for the Department. The case evaluated out after half sister's father obtained full custody through the family court. He won custody after mother submitted—after six months delay and multiple family court orders—to drug testing in November 2021. Her test was positive for fentanyl. Half sister's father told the Department that mother had been using drugs for five to six years, that after he and mother separated, in about 2017, mother became

---

[1] All undesignated statutory references as to the Welfare and Institutions Code.

romantically involved with a drug dealer, and that both maternal aunts also use drugs.

Public records corroborate mother's history of drug use and involvement in the drug trade. In December 2018, she was arrested in Chatsworth with the drug dealer half sister's father mentioned. Mother appeared to be under the influence and police discovered in their car a loaded gun, large quantities of heroin, Oxycodone and cocaine, and almost $10,000 in cash. In March 2022, eight months before D.R.'s birth, mother was arrested in North Carolina following a traffic stop. She, father, and another man were found in a vehicle with fentanyl pills and more than $20,000 in cash. Mother was freed on bail after this arrest on the condition that she enter a rehabilitation program. She left her rehabilitation program after one night and was then " ' "missing" ' " for 90 days.

Mother has minimized her drug history. After D.R. tested positive for fentanyl at birth, mother claimed she had been to rehab and sober for a year until, just a few weeks prior, she tried to treat a toothache by rubbing cocaine on her gums. That cocaine, she reasoned, must have contained fentanyl and caused D.R.'s positive test. (D.R. tested negative for cocaine.)

Upon D.R.'s detention, the juvenile court ordered the Department to provide fentanyl and other drug testing referrals for mother. Mother failed to appear for her first test in November 2022. Her second test was February 2023 and she refused to provide an adequate sample. Two days later, she tested positive for fentanyl. Three days after that, she tested positive again at a higher concentration. She missed her scheduled test about two weeks later; three days after the missed test, she tested positive at a concentration higher than the previous test. Mother disputed the results. She insisted she was not using drugs and the positive tests must have been caused by her touching drug residue while cleaning. She said "[i]f I was going to have a dirty test I would just do a no-show because it counts as the same as a

3

dirty." She claimed she was testing for the sober living facility where she was staying and all of her tests had been negative. The Department was unable to verify mother's claims with the sober living facility.

Upon D.R.'s removal, the juvenile court ordered family reunification services for mother. These included a full drug/alcohol program with aftercare; random and on-demand weekly drug/alcohol testing, including for fentanyl; a 12-step program with court card and sponsor; and individual counseling to address case issues, including substance abuse. According to mother, she would not drug test for the Department because the Department's testing site did not let her watch as her urine sample was analyzed. She said she would begin testing for the Department once she enrolled in a drug treatment program with parallel testing. She began an outpatient program in May 2023. She checked into a sober living home in June for a scheduled six-month stay. But in August, she was still making excuses for not testing for the Department. A letter from her outpatient program stated she "provided test results on 7/19/2023 and 7/24/2023" which were "negative." The letter did not specify that testing was for fentanyl. Mother withdrew from this program a few months later.

At the six-month review hearing in September 2023, the juvenile court found mother was not in substantial compliance with her case plan. Though it recognized she was making progress, the court emphasized mother needed to test for the Department, reiterating that it was "a court order"; that the directive was not to punish mother but to help her grasp the scope of her disorder; and that the court might consider accepting program testing in lieu of Department testing in the future, but it would need "to be able to have access and see the tests." The court again ordered mother to test for the Department.

Mother failed to heed the juvenile court's order. At the start of the 12-month review hearing in January 2024, she still

4

had not tested for the Department since her series of positive tests in February 2023. In advance of the hearing, her inpatient program gave the Department a summary, dated December 20, 2023, of results from eight drug tests administered in fall 2023 showing mother tested negative for various drugs.[2] The summary contained no reference to testing for fentanyl. An accompanying letter stated mother had "passed a total of 27 drug tests." The program also noted, without explanation, that mother's expected completion date was pushed back from December 2023 to February 2024.

The juvenile court inquired with mother's counsel about why she had ignored the order to take fentanyl tests for the Department. Counsel responded as follows: "Mother reports that the opiates testing for [her inpatient program] includes the fentanyl testing. · She also states that because her recovery program is specifically for fentanyl, the program is also testing for it. · They just haven't specifically noted it. · That is what mother has reported, Your Honor." The court continued the hearing to allow the Department to seek more information about the inpatient program testing. The court also issued an order for the release of records of drug testing mother had done as a condition of her probation.

In the ensuing days, mother's probation officer reported mother was "compliant with the conditions of her release" but that a federal court order was necessary to disclose test results. In response to the Department's request for test results and inquiry as to whether mother was tested for fentanyl, the director of mother's inpatient program told the Department they tested for all of the drugs listed on the December 20, 2023 test summary (see fn. 2, *ante*), plus fentanyl. He did not explain why fentanyl had not been listed on the December 20, 2023 summary. A few

---

[2] The drugs listed were: amphetamines, barbiturates, benzodiazepines, cocaine, marijuana metabolites, methadone, opiates, PCP, and propoxyphene.

days later, he provided another summary, this one dated February 5, 2024, of results from seven drug tests administered in December 2023 or January 2024 showing mother tested negative for various drugs. The format of the summary was the same as the December 20, 2023 summary except it now included fentanyl in the list of drugs tested. An accompanying letter stated mother had "passed a total of 33 drug tests." The program also noted, without explanation, that mother's expected completion date had again been pushed back, this time to May 2024.

After considering this evidence, the juvenile court terminated mother's reunification services and entered its setting order. It gave a detailed explanation for its decision. It noted that, after she tested positive for fentanyl the February prior, mother refused to test for the Department. It rejected mother's excuses for not testing—that she did not like the Department's testing protocol and was testing negative at home—as not credible. The court also discounted the last-minute evidence of mother's drug testing for third parties. It noted the Department had been unable to verify the actual test results from mother's inpatient program and was concerned that it did not have "a second pair of eyes" on the revised claim that mother was testing for fentanyl. Regarding testing for probation, the court noted it had no meaningful information about the results. Despite mother's efforts, the court concluded it could not find a substantial probability D.R. could be returned to her by May 2024 as mother was just not "far enough along" in her progress.

D.R. timely petitioned this court for review. Mother filed a joinder to his petition.

## DISCUSSION

D.R. challenges the juvenile court's order pursuant to section 366.26, subdivision (*l*) and California Rules of Court, rules 8.450(b) and 8.452. Together, these provisions generally permit appellate review of setting orders by extraordinary writ

6

only, with the objective of providing a decision on the merits before the scheduled section 366.26 hearing. Writ proceedings under these provisions generally work like an appeal, only faster. (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 807.)

As in ordinary appeals, the deference we give the decision on review is of fundamental importance. Appellate courts have long admonished counsel to acknowledge the proper standard of review in juvenile court writ proceedings. (See, e.g., *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021 ["In future, counsel's failure to acknowledge the proper standard of review might, in and of itself, be considered a concession of lack of merit."]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762 ["We have previously cautioned counsel that fact-specific arguments which ignore the substantial evidence standard of review are not appropriate. [Citation.] In the future such arguments, which wholly ignore our function as an appellate court, may be deemed frivolous."].)

Here, D.R. acknowledges the standard of review but then proceeds to reargue the matter as if our review were independent. His substantive argument is that "there was a substantial probability that [he] would have been returned to mother by the 18-month date. Mother was in full compliance with her case plan and demonstrated a commitment to sobriety."

We do not, as D.R.'s arguments imply, review setting orders independently. Rather, we review them for substantial evidence. (*Angela S. v. Superior Court, supra,* 36 Cal.App.4th at p. 763.) Substantial evidence supports the juvenile court's setting order.

At the 12-month review hearing, the juvenile court could extend the period of reunification services only if there was "a substantial probability that [D.R.] w[ould] he returned to the physical custody of [mother] and safely maintained in the home within the extended period of time . . . ." (§ 366.21, subd. (g)(1).) To make such a finding, the juvenile court was required to find "(A) That [mother] ha[d] consistently and regularly contacted

7

and visited with [D.R.][;] [¶] (B) That [mother] ha[d] made significant progress in resolving problems that led to [D.R.'s] removal from the home[;] [and] (C) [Mother] ha[d] demonstrated the capacity and ability both to complete the objectives of [her] treatment plan and to provide for [D.R.'s] safety, protection, physical and emotional well-being, and special needs." (*Ibid.*) These factors are conjunctive, meaning that if just one is not established, the court lacked authority to extend the reunification period.

We have neither been directed to nor found any authority addressing which party has the burden of proof to establish the "substantial probability" factors specified in section 366.21, subdivision (g)(1) through (3). Logically, it would fall on the person seeking to avoid the scheduling of the section 366.26 hearing. Moreover, when the Legislature does not charge the Department with an evidentiary burden, we presume the Legislature did not intend for the Department to have it. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1344.) Here, the Legislature did not do so, as it did with other showings required under section 366.21. (See § 366.21, subd. (e)(1) [social worker bears burden of showing detriment]; see also *id.,* subd. (f)(1) [same].) Because the statute does not assign the burden of proof to the Department to show an absence of "substantial probability," it was the burden of the person or persons seeking to avoid a setting order—here, D.R. and mother—to show the subdivision (g)(1) through (3) factors were satisfied.

As D.R. bore the burden below to show there was a substantial probability he would be returned to mother, we may reverse only if he demonstrates on appeal the record compels a finding in his favor as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, overruled on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) D.R. fails to do so.

8

Specifically, the record does not compel the conclusion "[t]hat [mother] ha[d] made significant progress in resolving problems that led to [D.R.'s] removal from the home" or that she "ha[d] demonstrated the capacity and ability both to complete the objectives of [her] treatment plan and to provide for [D.R.'s] safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(B), (C).)

Mother had a long history of fentanyl use that put D.R. at risk even before birth. He was born with severe withdrawal symptoms. She denied using fentanyl during her pregnancy (while admitting to cocaine use). When she finally tested for the Department three months after D.R.'s birth, mother was positive for the drug she denied using. When she tested again, the concentration was higher. And when she tested again, the concentration was higher still. This amply supports the conclusion mother was using fentanyl in February 2023.

But she continued to deny it. She claimed her positive tests could have been from skin contact while cleaning. She also questioned the testing. She chided the Department for crediting the results of her positive tests because "[i]f [she] was going to have a dirty test [she] would just do a no-show because it counts as the same as a dirty." Mother then proceeded to never test for the Department again. Mother's own words support the inference that she was avoiding testing for the Department because she knew she would test positive. This inference is bolstered by mother's behavior in her family law case concerning D.R.'s half sister. There, mother refused to test for months before testing positive for fentanyl.

The test summaries mother's inpatient treatment program provided and the report that she was "compliant with the conditions of her release" following her most recent drug arrest do not compel the conclusion she had stopped using fentanyl. The juvenile court weighed this evidence and discounted it. It had reason to do so. There was no evidence of what mother was

9

testing for as a condition of her parole.  As to the summaries from her inpatient treatment program, they initially made no reference to fentanyl testing.  When the Department pressed the issue, the facility generated a new summary adding reference to fentanyl for tests administered in December 2023 and January and February 2024.  When the Department asked for actual test results, the program did not respond.  We see no error in the court's weighing of the evidence.

In any event, even if mother were testing negative for fentanyl, there was other evidence mother was not significantly progressing in addressing her drug use and lacked the capacity and ability to complete the objectives of her treatment plan.  She was initially scheduled to complete her inpatient program in six months.  For unexplained reasons, that period was extended—first for two months and then another three months.  It is reasonable to infer mother was not progressing well in her program when its length nearly doubled and there was no certainty the projected completion date would hold.  This inference is bolstered by mother's history of enrolling in a drug program and then relapsing.

## DISPOSITION

The petition is denied.  D.R.'s request for a stay to permit resolution of his petition prior to the scheduled June 4, 2024 section 366.26 hearing is denied as moot.  This opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).


GRIMES, J.


WE CONCUR:


STRATTON, P. J.        WILEY, J.


10